May Term,
1851.

The Centre-
ville and Ab-
ington Turn-
pike Com-
pany
v.
Barnett.

---

The Centreville and Abington Turnpike Company *v.* Barnett and Another.

Chancery will restrain the commission of some acts of trespass, but the acts must be such as would be attended with irreparable mischief.

The fact that a trespasser is insolvent will not give chancery jurisdiction to enjoin his acts where the other circumstances of the case preclude it.

APPEAL from the *Wayne* Circuit Court.

Perkins, J.—Bill in chancery by the *Centreville and Abington Turnpike Company* against *Barnett* and *Bowers*,

contractors on the road, praying an injunction. Tempo-
rary injunction granted in vacation, but dissolved at the
succeeding session of the Circuit Court. Appeal to this
Court.

The bill sets out the charter and organization of the
company and alleges the letting of the construction of
the whole road, about six miles in length, on the 25th
day of *September*, 1848, to the defendants, to be complet-
ed by the 1st day of *November*, 1849, for the sum of 12,-
500 dollars, payable upon monthly estimates of the en-
gineer as the work progressed, one-fifth of the estimate
for each month, however, to be retained till the final com-
pletion of the road. The bill states that the defendants
commenced operations under their contract in *October*,
1848, and proceeds, "Your complainant further shows
that the work done on said road, by the said defendants,
up to the 25th day of *June*, 1849, according to the esti-
mate of the engineer in the employ of the company,
amounted, in value, to 2,040 dollars and 33 cents, of
which your complainant has paid them, at various times,
the sum of 2,230 dollars, being 306 dollars and 46 cents
more than they were entitled to under said contract.
Your complainant further shows that nearly all of said
work, consisting mostly of grubbing, grading, culverting,
and bridging, is done in an unworkmanlike manner, and
that in the prosecution of the work on said road, the
said defendants have neglected, in nearly every particu-
lar, to be governed by the specifications thereof, and have
prosecuted the work in such a manner as to satisfy your
complainant that they would not finish the same by said
1st day of *November*, 1849."

The contract between the parties contains this provi-
sion:

"To prevent all disputes and misunderstanding be-
tween the parties in relation to any of the stipulations of
this agreement, it is mutually agreed that the engineer
employed by the company shall be the umpire between
the parties; and if in the opinion of the engineer afore-
said, the party of the first part shall refuse or neglect to

May Term,
1851.

THE CENTRE-
VILLE AND AB-
INGTON TURN-
PIKE COMPANY
v.
BARNETT.

May Term,
1851.

The Centre-
ville and Ab-
ington Turn-
pike Company
v.
Barnett.

prosecute the work contemplated by this agreement in such a manner as not to give reasonable assurance of its completion by the time specified, or shall refuse or neglect all or any of the rules, specifications, and instructions given by him, or any other authorized agent, or shall perform or suffer to be performed any part of the work in an unfaithful or unworkmanlike manner, the said engineer, with the president, shall, in either case, have full power to determine that this contract shall be forfeited by the contracting party; and whenever a certificate of such determination shall be filed with the secretary of the company, the party of the second part shall be absolved from every obligation imposed upon them by this agreement, and the company may immediately thereafter proceed to dispose of said sections (composing the entire road) as they may deem most advisable, and all moneys coming to said contracting party, at the time of such disposal, shall be forfeited to the company."

The bill avers that on the 25th day of *June*, 1849, the said president and engineer filed the certificate, pursuant to the contract, with the secretary of the company, declaring the contract forfeited by the contractors; that the directors of the company approved of, and concurred in, the declaration, notified the defendants of the facts and proceeded to re-let the road to other contractors; but that, " notwithstanding said defendants well knew that the contract was rescinded, and was null and void, and that they had no right to enter on said road, nevertheless they did, afterwards, on the 26th day of *June*, 1849, enter upon it, and, as complainant is informed and believes, declared, and yet declare, their determination to maintain, with force and arms, the possession thereof, and have ever since kept possession, and still assert their determination to do so, and to prevent complainant from entering upon and finishing said road. Your complainant further shows that said defendants are pretending to be at work on said road under said contract, and have a few hands and a few teams at work thereon, without the advice of

an engineer, and in such a manner as to do the road more harm than good in many places; that said defendants are wholly insolvent, and if they are permitted to retain possession of said road, to the exclusion of complainant, and to dig up, run on, and injure it, as they are doing, complainant will be without remedy and suffer irreparable damage: that said turnpike is a link in a chain of turnpike," &c.   The bill prays the Court to perpetually restrain said persons and all under them, from committing waste or trespass on, or from intermeddling with, said road.

According to this bill, which, in the present stage of the case is taken to be true, the contract between the parties was forfeited and became void on the 25th day of *June*, 1849.   The company was absolved from the obligation further to compensate the defendants for labor on said road, the right of said defendants to enter upon it, as contractors, ceased, and in their subsequent entry they were simply trespassers, as any stranger would have been, entering in the same manner; and the question is, whether such a trespass is shown in this case as chancery has jurisdiction to enjoin.   It is well settled now that chancery will restrain the commission of some acts of trespass, but the particular acts which will and will not be restrained have not been fully enumerated. They must, however, be such as would be attended with irreparable mischief.   It is asserted in this bill that the acts here complained of would be attended with such mischief, but that assertion amounts to nothing.   We look at the particular acts charged and threatened, and the circumstances under which they were done and threatened, to discover whether the damage from them might be irreparable.   In this case, it is said these two men, *Barnett* and *Bowers*, by means of a few hands and teams, are in possession of, and gratuitously working upon, about six miles of turnpike-road to the injury rather than benefit of that road in many places, and that they threaten to so continue working notwithstanding they are utterly insolvent.   These are all the acts of tres-

May Term,
1851.

THE CENTRE-
VILLE AND AB-
INGTON TURN-
PIKE COMPANY
v.
BARNETT.

pass, done or threatened, that we can infer from the bill[1], and it seems to us they are not such as call for the interposition of a court of chancery. It would seem that two insolvent men could hardly ruin a turnpike company by gratuitously grubbing, bridging, or hauling gravel upon their unfinished road, even if they did not execute the work very skilfully. Were they hauling off the gravel and selling it elsewhere, it might cause more serious injury. And it would also seem to be a difficult thing for two insolvent men to keep the company and all subsequent contractors a long time so completely off of six miles of road that they could not work it, at least, conjointly with the insolvent trespassers. If these men are not responsible for their acts in damages, we should suppose they might be crowded out of the way by a *moliter manus imposuit*.

The fact that a trespasser is insolvent will not give chancery jurisdiction to enjoin his acts where the other circumstances of the case preclude it.

As to the damages for the negligent construction of the work done prior to the 25th of *June*, the bill does not go for them; and if it did, and chancery even had jurisdiction to award them, a case entitling the present plaintiff to such, is not made. True, the bill asserts the work to have been all performed in an unworkmanlike manner, but at the same time it in fact shows that the company and engineer in charge had been so well satisfied with it during its performance, that they had made monthly estimates and payments upon it, the payments being to a greater amount than was due under the contract, not withholding the fifth as a forfeit, which might have been done. On the whole, we think the decree must be affirmed with costs.

*Per Curiam.*—The decree is affirmed with costs.

*J. S. Newman* and *J. B. Julian*, for the appellant.

*C. H. Test* and *J. Perry*, for the appellees.